# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CHRISTINE DEFRANCESCO, <br><br> Plaintiff, <br><br> -against- <br><br> MIRADOR REAL ESTATE, LLC, <br><br> Defendant. | **COMPLAINT** <br><br> **Docket No.: 18-cv-4032** <br><br> Jury Trial Demanded |

CHRISTINE DEFRANCESCO, ("Plaintiff"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against MIRADOR REAL ESTATE, LLC ("Defendant"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action for damages and equitable relief based upon violations that Defendant committed of Plaintiff's rights guaranteed to her by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR"), tit. 12, § 141-1.4; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (iv) the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); (v) the NYLL's requirement that employers furnish employees with their earned commissions in a timely manner, NYLL § 191-C; (vi) one of the anti-retaliation provisions of the NYLL, NYLL § 215(1); (vii) the Internal Revenue

1

Code's ("IRC") prohibition against any person filing a fraudulent information return with respect to payments purported to be made to any other person, 26 U.S.C. § 7434(a); and (viii) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff worked for Defendant - - a real estate brokerage company - - from April 10, 2017 until November 22, 2017, as a "Leasing Manager" for certain "Midtown East" apartment buildings in Manhattan. As described below, throughout her employment, Defendant failed to pay Plaintiff the wages lawfully due to her under the FLSA and the NYLL. Specifically, Defendant required Plaintiff to work, and Plaintiff did in fact work, in excess of forty hours each week or virtually each week, yet Defendant misclassified her as an exempt "manager" and paid her a flat weekly salary, and therefore failed to compensate Plaintiff at any rate of pay, let alone at the statutorily required rate of one-and-one-half times her regular rate of pay, for all hours that she worked in excess of forty each week, in violation of the FLSA and the NYLL.

3. Defendant also violated the NYLL by failing to: provide Plaintiff with accurate wage statements on each payday; provide Plaintiff with an accurate wage notice upon hire; and pay Plaintiff any of her earned commissions.

4. Making matters worse, after Plaintiff complained to Defendant about Defendant's failure to pay her any of her earned commissions, Defendant retaliated by terminating Plaintiff's employment in violation of the NYLL.

5. And in one final act of retaliation or in act of illegality unto itself, Defendant issued Plaintiff a fraudulent Form W-2 information return for the 2017 tax year, reflecting more earned income than Defendant ever actually paid Plaintiff, in violation of the IRC.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.* and 26 U.S.C. § 7434. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

8. At all relevant times herein, Plaintiff worked for Defendant in New York, and was an "employee" entitled to protection as defined by the FLSA, NYLL, and NYCCRR and a "person" entitled to protection under the IRC.

9. At all relevant times herein, Defendant was and is a New York limited liability company with its principal place of business located at 330 East 39th Street, # 18G, New York, New York 10016.

10. At all relevant times herein, Defendant was and is an "employer" within the meaning of the FLSA and the NYLL and a "person" within the meaning of the IRC. Additionally at all relevant times herein, Defendant's qualifying annual businesses exceeded $500,000.00, and Defendant was engaged in interstate commerce within the meaning of the FLSA as employed two or more employees and which contracts with residential apartment buildings to lease apartments in at least New York and Connecticut, the combination of which subjects Defendant to the FLSA's overtime requirements as an enterprise.

## BACKGROUND FACTS

11. Defendant is a real estate brokerage with its principal New York offices located at 330 East 39th Street, New York, New York 10016, and which contracts with residential buildings in and around New York City and Connecticut to lease apartments to individuals.

12. On April 10, 2017, Defendant hired Plaintiff as a "Leasing Manager" of "Midtown East," operating primarily out of Defendant's office located at 330 East 39th Street, and with a territory that tasked her with leasing residential apartment units in several buildings located in Manhattan.

13. Throughout her employment with Defendant, Plaintiff's primary duty was to lease apartments, which involved the following tasks: on-site showings of apartments; verifying potential tenants' applications; handling paperwork for leasing applicants; and facilitating applicants' and/or guarantors' signing of leases.

14. Despite her title as a "manager," Plaintiff did not have any meaningful discretion or managerial responsibilities. For example, she played no role in employee hiring or firing decisions, she did not issue discipline to other employees, and she was not responsible for determining any employee work schedules.

15. Throughout her employment, Defendant required Plaintiff to work, and Plaintiff did work, five days per week in Defendant's 330 East 39th Street office, from either 9:00 a.m. or 10:00 a.m. until between 7:00 p.m. and 8:00 p.m. each day. In addition, Defendant required Plaintiff to work, and Plaintiff did in fact work, one-to-two hours per day from home on her regularly-scheduled five work days, plus three-to-five hours per day from home on her two "days off," following-up on leads, corresponding with applicants and leasing agents, and completing or preparing paperwork relating to showings, leasing applications, or closings. Thus, Defendant

required Plaintiff to work, and Plaintiff did work, a total of between fifty-six and seventy hours per week.

16. Throughout her employment, Defendant paid Plaintiff a flat annual salary of $70,000.00, amounting to $1,346.15 per week, solely intended to compensate Plaintiff for her first forty hours of work each week, which amounts to a regular hourly rate of $33.65.

17. Thus, throughout the entirety of Plaintiff's employment, Defendant failed to pay Plaintiff at any rate of pay, let alone at the rate one and one-half times her regular rate of pay, which is $50.48, for all hours that Plaintiff worked per week in excess of forty.

18. By way of example, during the week of July 17 through July 23, 2017, Defendant required Plaintiff to work, and Plaintiff did in fact work, sixty-four hours. Specifically, on Monday, July 17, Plaintiff worked in the office from 9:00 a.m. to 7:00 p.m. and then two hours at home. On Tuesday and Wednesday, July 18 and 19, Plaintiff worked from 10:00 a.m. to 8:00 p.m. in the office and then two hours at home. On Thursday, July 20, Plaintiff's scheduled day off, Plaintiff worked five hours at home. On Friday, July 21, Plaintiff worked in the office from 9:00 a.m. to 7:00 p.m. and then two hours at home. On Saturday, July 22, Plaintiff worked in the office from 11:00 a.m. to 6:00 p.m. and then two hours at home. On Sunday, July 23, Plaintiff's scheduled day off, Plaintiff worked about two hours at home. During that same week, Defendant paid Plaintiff her flat salary of $1,346.15, amounting to a regular rate of pay of $33.65 per hour for her first forty hours. Defendant paid Plaintiff nothing for the twenty-four hours that Plaintiff worked over forty that week.

19. Defendant paid Plaintiff her salary on a weekly basis.

20. On each occasion when Defendant paid Plaintiff, Defendant failed to provide Plaintiff with a wage statement that accurately listed, *inter alia*, her actual hours worked for that week and/or her regular and overtime rates of pay for all hours worked.

21. Additionally, Defendant did not provide Plaintiff with any wage notice at the time of her hire, let alone one that accurately contained, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether she would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including tip or meal allowances; the regular payday designated by Defendant in accordance with the NYLL; the name of Defendant; any "doing business as" names used by Defendant; the physical address of Defendant's main office or principal place of business, and a mailing address if different; and Defendant's telephone number.

22. Each hour that Plaintiff worked was for Defendant's benefit.

23. Defendant acted in the manner described herein so as to maximize its profits while minimizing its labor costs and overhead.

24. In addition to a flat salary, Defendant entered into a commission agreement with Plaintiff wherein Plaintiff earned commissions based on leasing deals that she completed for Defendant.

25. Defendant and Plaintiff never reduced the terms of Plaintiff's commission agreement to writing.

26. Plaintiff's understanding of her commission agreement is and was based on her oral agreement with Defendant at the time of her hire. The terms of that agreement never changed throughout Plaintiff's employment.

27. Plaintiff earned different commission rates based upon the nature of her involvement with any given lease agreement.

28. For the deals that Plaintiff closed entirely on her own, meaning that Plaintiff worked directly with the applicant through the entire process of viewing the property, verifying the applicant's application, and closing the leasing agreement, she earned a flat commission of $850.00 per deal.

29. For the deals with which Plaintiff assisted other employees in closing or with paperwork, Plaintiff earned three percent of the total commission received by Defendant. The total commission received was calculated as one month's rent or seven and one-half percent of one year's rent if another brokerage shared in the deal.

30. Finally, for some deals with which Plaintiff assisted others more actively, she earned ten to twenty percent of $850.00 depending on Plaintiff's involvement. Specifically, for those deals for which she received twenty percent, Plaintiff typically assisted another broker with showing the apartment a second time and assisted the applicant with completing the leasing application. For those deals for which she received ten percent, Plaintiff typically assisted another broker with only the leasing application or another aspect of the deal.

31. In her time working for Defendant, Plaintiff closed at least twenty leasing deals on her own and assisted others in an estimated one hundred and seventeen leasing deals.

32. Thus, Plaintiff earned approximately $26,883.80 in commissions while employed by Defendant.

33. Defendant has never paid Plaintiff any of her earned commissions.

34. Thus, on multiple occasions, including in a September 5, 2017 email, Plaintiff complained to Defendant's managing partner, Karla Saladino, about Defendant's failure to pay Plaintiff her earned commissions.

35.  In direct response to this complaint, Defendant told Plaintiff that she would receive her earned commissions in December 2017.

36.  But rather than pay Plaintiff her earned and owed commissions in December, Defendant terminated Plaintiff's employment on November 22, 2017, blatantly retaliating against Plaintiff as a result of her complaints about not receiving her earned commissions.

37.  But Defendant's retaliation was not limited to simply terminating Plaintiff's employment. On November 22, 2017, Defendant offered Plaintiff a severance payment of $2,692.32, which Plaintiff rejected and never received.

38.  Yet, despite never paying Plaintiff this money, in late January of 2018, Defendant issued to Plaintiff a fraudulent IRS Form W-2 information return for the 2017 tax year, containing the severance payment as part of Plaintiff's 2017 income.

39.  Defendant issued Plaintiff this fraudulent information return with the specific intent of causing her damages and complicating her tax obligations in retaliation for her complaints about not receiving her earned commissions.

40.  Defendant issued Plaintiff this fraudulent information return despite Defendant's knowledge that it never paid Plaintiff any amount of the severance it offered to her on November 22, 2017.

41.  Defendant willfully filed or caused to be filed this fraudulent information return with the Internal Revenue Service ("IRS") on or before March 1, 2018.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
*Unpaid Overtime under the FLSA*

42.  Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

44. As described above, Defendant is an employer within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

45. As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendant failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

46. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her regular rate of pay.

47. Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendant's violation of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
*Unpaid Overtime under the NYLL and the NYCCRR*

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

50. As described above, Defendant is an employer within the meaning of the NYLL and the NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCCRR.

51. As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendant failed to compensate Plaintiff in accordance with the NYLL's and the NYCCRR's overtime provisions.

52.     Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her regular rate of pay.

53.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendant's violations of the NYLL's and NYCCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

54.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55.     N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

56.     As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

57.     As also described above, Defendant, on each payday, failed to furnish Plaintiff with accurate wage statements containing the criteria required under the NYLL.

58.     Pursuant to NYLL § 198(1-d), Defendant is liable to Plaintiff in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Furnish Proper Wage Notice in Violation of the NYLL*

59.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60.     NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

61. As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

62. As also described above, Defendant failed to furnish Plaintiff with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

63. Pursuant to NYLL § 198(1-b), Defendant is liable to Plaintiff in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Pay Earned Commissions on a Timely Basis in Violation of the NYLL*

64. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65. NYLL § 191-C requires that employers pay salespersons their earned commissions in accordance with the agreed terms of employment, but not less frequently than once each month and not later than within five business days after termination, or within five business days after they become due in the case of earned commissions not due when the contract is terminated.

66. As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

67. As also described above, Defendant, following Plaintiff's termination, failed to pay Plaintiff for the commissions she earned throughout her employment as the NYLL requires.

68. Plaintiff is entitled to recover for all commissions earned for which Defendant did not timely or ever pay Plaintiff.

69. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendant's violations of the NYLL's provisions concerning the timely payment of all earned commissions.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the NYLL*

70. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71. NYLL § 215(1)(a) prohibits employers from discharging or in any other manner discriminating against an employee because such employee has made any complaint relating to what an employee reasonably and in good faith believes to be an employer's violation of the NYLL.

72. As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

73. As also described above, after Plaintiff made a good faith complaint with Defendant asserting that Defendant failed to pay her earned commissions in a timely manner, which is in violation of the NYLL, Defendant retaliated by terminating Plaintiff's employment and issuing Plaintiff and filing with the IRS a fraudulent information return thereafter.

74. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

75. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

76. Additionally, Plaintiff is entitled to liquidated damages, punitive damages for Defendant's malicious, willful, and wanton violations of the NYLL's anti-retaliation provision, interest, and attorneys' fees.

77. Pursuant to NYLL § 215(2)(b), contemporaneous with the filing of this Complaint, Plaintiff is filing a Notice of Claim with the Office of the New York State Attorney General, thereby advising the aforementioned of her claim for retaliation under Section 215 of the NYLL.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Willfully Filing a Fraudulent Information Return in Violation of the IRC*

78. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

79. 26 U.S.C. § 7434(a) prohibits any person from willfully filing a fraudulent information return with respect to payments purported to be made to any other person.

80. As described above, Defendant willfully filed a fraudulent Internal Revenue Service Form W-2 on behalf of Plaintiff.

81. As a result, Plaintiff is entitled to an amount equal to the greater of $5,000.00 or the sum of: any actual damages sustained by Plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), the costs of this action, and, in the court's discretion, reasonable attorneys' fees.

82. Pursuant to 26 U.S.C. § 7434(d), contemporaneous with the filing of this Complaint, Plaintiff is providing a copy of this Complaint to the IRS.

## DEMAND FOR A JURY TRIAL

83. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

c. All damages that Plaintiff has sustained as a result of the Defendant's conduct, including all unpaid wages and commissions and any short fall between wages and commissions paid and those due under the law that Plaintiff would have received but for Defendant's unlawful payment practices;

d. Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

e. All compensatory damages that Plaintiff has sustained due to Defendant's retaliatory conduct, including any financial out-of-pocket losses that Plaintiff might incur or might have incurred as a result of such conduct, including back pay, front pay, and loss of any other benefits of employment, whether legal or equitable;

f. Granting an award of damages to be determined at trial to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment in connection with her retaliation claim;

g. Granting an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish as provided by law in connection with her retaliation claim;

h. Punitive damages, as provided by law, due to Defendant's retaliatory conduct;

i. An amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Plaintiff as a proximate result of Defendant's filing of the fraudulent information return, including any costs attributable to resolving deficiencies asserted as a result of such filing;

j. Awarding Plaintiff her reasonable attorneys' fees, as well as her costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

k. Pre-judgment and post-judgment interest, as provided by law; and

l. Granting Plaintiff such other and further relief as this Court finds necessary and proper.

Dated: New York, New York
May 4, 2018

                            Respectfully submitted,

                            BORRELLI & ASSOCIATES, P.L.L.C.
                            *Attorneys for Plaintiff*
                            655 Third Avenue, Suite 1821
                            New York, New York 10017
                            Tel.   (212) 679-5000
                            Fax.  (212) 679-5005

                  By: _____
                            MICHAEL R. MINKOFF (MM 4780)
                            ALEXANDER T. COLEMAN (AC 1717)
                            MICHAEL J. BORRELLI (MB 8533)