# EXHIBIT B

| | |
|---|---|
| **From:** | Mark Goldberg |
| **Sent:** | Thursday, June 28, 2018 3:33 PM |
| **To:** | 'Michael R. Minkoff' |
| **Subject:** | RE: My contact info |
| **Attachments:** | DeFrancesco Arbitration and Confidentiality Agreement.pdf |

Michael, I will send you a series of emails and attachments.  Attached is a scanned copy of the original arbitration and confidentiality agreements signed by Ms. DeFranceso and Leslie Zemnick on 4/24/2017.  I saved this pdf to my computer and am attaching it – to the extent you need such info to analyze metadata.  This image was created today from the hard copy originals, which was emailed to me and then saved to my computer.

## CONFIDENTIALITY, RESTRICTIVE COVENANT AND INTELLECTUAL PROPERTY AGREEMENT

This Confidentiality, Restrictive Covenant and Intellectual Property Agreement (this "Agreement") is entered into between Mirador Real Estate LLC. (the "Company," together with the persons or entities for which the Company provides management services and their respective affiliates, predecessors, successors and assigns, the "Company Group") and *Chrishne Defranresco* ("Employee"). In consideration of and in exchange for employment or continuing employment, exposure to the Company Group's Confidential Information (defined below) and customers, and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, it is expressly agreed between the Company and Employee as follows:

1. Representations and Acknowledgements. Employee understands, acknowledges and agrees that: (i) among the Company Group's most valuable and indispensable assets are its Confidential Information and its close relationships with its customers, employees and independent contractors, which the Company Group has devoted and continues to devote a substantial amount of time, money and other resources to develop; (ii) in connection with Employee's employment with the Company, Employee will be exposed to and acquire the Company Group's Confidential Information and develop, at the Company Group's expense, special and close relationships with the Company Group's customers, employees and independent contractors; (iii) the Company Group's Confidential Information and close relationships with its customers, employees and independent contractors must be protected; (iv) the Company is employing or continuing to employ Employee only because of the promises and acknowledgements that Employee makes in this Agreement; (v) to the extent required by law, the scope of the covenants in this Agreement are reasonable and do not impose a greater restraint on Employee than is necessary to protect the Company Group's Confidential Information, close relationships with its customers, employees and independent contractors and other legitimate business interests; and (vi) Employee's compliance with such covenants will not inhibit Employee from earning a living or from working in Employee's chosen profession.

2. Confidential Information. Employee represents and agrees that both during Employee's employment by the Company and at all times thereafter, Employee will not, except as required to discharge effectively and appropriately Employee's duties to the Company or as may be required by law, directly or indirectly, use or disclose to any third person, without the prior written consent of the Company, any Confidential Information of the Company Group. For purposes of this Agreement, "Confidential Information" means all information of a confidential or proprietary nature regarding the Company Group or its business or properties that the Company Group has furnished or furnishes to Employee, whether before or after the date of this Agreement, or is or becomes available to Employee by virtue of Employee's employment by the Company, whether tangible or intangible, and in whatever form or medium provided, as well as all information Employee generates that contains, reflects or is derived from such information that, in each case, has not been published or disclosed to, and is not otherwise known to, the public (or only known to the public, directly or indirectly, as a result of conduct by Employee that is not authorized by the Company). The term, "Confidential Information" shall include, but not be limited to, rent rolls, rent listings, tax return information, pricing reports, strategies, techniques, customer lists, customer requirements and specifications, designs, financial data and reports, spreadsheets, sales figures, costs and pricing figures, marketing and other business plans, product development, marketing concepts, personnel matters, drawings, specifications, instructions, methods, processes, techniques, computer software or data of any sort developed or compiled by the Company Group, formulae or any other information relating to the Company Group's services, products, sales, technology, research data, software and all other know-how, trade secrets or proprietary information, or any copies, elaborations, modifications and adaptations thereof and human resource information, including information relating to the compensation, benefits and performance of Company Group employees. In the event that the Company Group is bound by a confidentiality agreement or understanding with a customer, vendor, supplier or other party regarding the confidential information of such customer, vendor, supplier or other party, which is more restrictive than specified above in this Section 2,

and of which Employee has notice or is aware, Employee also agrees to adhere to the provisions of such other confidentiality agreement, which shall not be superseded by this Section 2.

3.  Intellectual Property.  Employee acknowledges and agrees that all Intellectual Property created, made or conceived by Employee (solely or jointly), during Employee's employment by the Company, will be owned exclusively by the Company whenever the Intellectual Property relates to the actual or anticipated businesses of the Company Group or results from or is suggested by any work performed by employees for or on behalf of the Company Group.  Employee further acknowledges and agrees that all such Intellectual Property shall constitute "works made for hire" under the Copyright Act of 1976. Employee agrees (a) to the extent such Intellectual Property is deemed not to be a works made for hire, that this Agreement shall constitute an assignment to the Company of the Employee's rights (including, but not limited to, copyright, trademark, trade dress, trade secret, design and patent rights), if any, in all such Intellectual Property, and (b) to assist the Company, and to take all reasonable steps, with securing patents, registering copyrights and trademarks, and obtaining any other forms of protection for the Intellectual Property in the United States and elsewhere.    As used in this Agreement, "Intellectual Property" shall mean and include literary works, product designs, artwork, graphic designs, web site designs, audio-visual works, trademarks, business ideas and methods, Confidential Information (as defined in Section 2 above), and any other patents, inventions or works of creative authorship.

4.  Company Property.  Employee agrees that all Confidential Information, drawings, designs, reports, computer programs or data, books, handbooks, manuals, files (electronic or otherwise), computerized storage media, papers, memoranda, letters, notes, photographs, facsimile, software, computers, PDAs, Blackberries and other documents (electronic or otherwise), materials and equipment of any kind that Employee has acquired or will acquire during the course of Employee's employment with the Company are and remain the property of the Company.  Upon termination of employment with the Company, or sooner if requested by the Company, Employee agrees to return all such documents, materials and records to the

Company and not to make or take copies of the same without the prior written consent of the Company.

5.  Non-Interference and Non-Competition.

a.  No-Interference with Customers and Suppliers; Non-Competition.  Employee agrees that, during the Employee's employment with the Company and for a period of one (1) year thereafter (the "Restricted Period"), regardless of whether, or on what basis, Employee's employment is terminated or any claim that Employee may have against the Company under this Agreement or otherwise, Employee shall not, without the prior written consent of the Company, directly or indirectly, on behalf of himself or on behalf of or in conjunction with any person or entity, actually or attempt to:

(i)  solicit,  induce,  contact  or persuade any Customer (defined below) to terminate, reduce or refrain from renewing or extending its contractual or other relationship with any member of the Company Group in regard to the purchase of products or services developed, marketed or sold by any member of the Company Group, or to become a customer of or enter into any contractual or other relationship with Employee or any other person or entity for products or services that are the same, similar or otherwise in competition with the products and services of any member of the Company Group (collectively, "Competing Services"); and/or

(ii)  solicit,  induce,  contact  or persuade any supplier of goods or services to any member of the Company Group ("Supplier") to terminate, reduce or refrain from renewing or extending its contractual or other relationship with any member of the Company Group in regard to the supplying of goods or services to the Company Group; and/or

(iii) offer or provide to any Customer any Competing Services; and/or

(iv) engage in the business of providing Competing Services within 100 miles of New York, New York.

For purposes of this Agreement only, "Customer" shall mean any company or individual:  (i) who contacted Employee, whom Employee contacted or served, or for whom Employee supervised

contact or service regarding the actual or potential purchase of products or services of any member of the Company Group during the period of Employee's employment by the Company; (ii) who purchased products or services from any member of the Company Group during the period of Employee's employment by the Company; and/or (iii) who was an active prospect of any member of the Company Group for the purchase of products or services from any member of the Company Group during the period of Employee's employment by the Company. For purposes of this Agreement only, Customers shall include, without limitation, investors in transactions of which any Company Group member is a party, tenants of and serviced by any Company Group member, hotel guests and health club members. For purposes of this Agreement, "products or services" of the Company Group, including of any of its members, shall include, without limitation, the providing of real estate rentals (including residential and commercial rentals); real estate acquisition, financing and development; hotel services; health club services; and financial market services and products, including the services and products involving stocks, bonds and private placement transactions.

b. <u>No Interference with Employees</u>. Employee agrees that, during the Restricted Period, regardless of whether, or on what basis, Employee's employment is terminated or any claim that Employee may have against the Company under this Agreement or otherwise, Employee shall not, without the prior written consent of the Company, directly or indirectly, on behalf of himself or on behalf of or in conjunction with any person or entity, actually or attempt to: (i) solicit, induce or entice any employee, consultant or independent contractor of any member of the Company Group to terminate, reduce or refrain from renewing or extending such person's or entity's business or employment relationship with a member of the Company Group; (ii) solicit, induce or entice any employee of any member of the Company Group to engage in Competing Services; (iii) employ or otherwise engage as an employee, independent contractor or consultant (a) any employee of a member of the Company Group or (b) any person who was employed by a member of the Company Group within the prior twelve-month period; or (iv) otherwise interfere with the relationship between the Company and any employee, consultant or independent contractor of a member of the Company Group.

c. <u>Notice to Subsequent Employers</u>. Upon commencing any new employment or independent contractor relationship during the Restricted Period, Employee shall expressly advise each new employer and each person or entity for whom Employee has agreed to serve as an independent contractor of Employee's continuing obligations to the Company Group under this Agreement and, in particular, this Section 5.

6. <u>Remedies</u>. Employee understands and acknowledges that a breach of the provisions of this Agreement would injure the Company Group irreparably in a way which could not be adequately compensated for by an award of monetary damages. Employee therefore consents to the issuance to the applicable member of the Company Group of a preliminary and/or permanent injunction, without the posting of a bond, to restrain any such breach or threatened breach. Additionally, in the event Employee breaches or threatens to breach any of the covenants, promises or obligations contained in this Agreement, the applicable member of the Company shall be entitled to recover without limitation from Employee all costs and fees (including reasonable attorneys' fees) incurred by a member of the Company Group in connection with enforcing this Agreement. Nothing herein shall be construed, however, as prohibiting any member of the Company Group from pursuing any other available remedies for such breach or threatened breach.

7. <u>Non-Disparagement</u>. During and after Employee's employment with the Company, Employee agrees not to make, except as may be required by law, any statement (verbal, written or otherwise) about any member of the Company Group or its business, personnel, members, directors, officers, consultants, services, products or business methods that is intended to or is reasonably likely to disparage or denigrate a member of the Company Group.

8. <u>Other Agreements; Warranties</u>. Employee represents and warrants that Employee is not bound by the terms of a confidentiality agreement or non-competition agreement or any other agreement with a former employer or other third party that would preclude Employee from being employed by the Company or from effectively performing Employee's obligations to the Company. Employee further warrants that Employee has the right to make all

disclosures that Employee will make to the Company during the course of Employee's employment with the Company. Employee agrees not to disclose to the Company, or seek to induce the Company to use, any confidential information in the nature of trade secrets or other proprietary information belonging to others. Employee further represents that he has provided to the Company a copy of any and all agreements with a former employer or other third party which may limit Employee's right to provide services, or to make disclosures, to the Company.

9.  At-Will Employment.  The Company and Employee acknowledge and agree that this Agreement does not affect the ability of either party to terminate their employment relationship, which relationship, unless otherwise agreed to in writing signed by the president of the Company, may be terminated at any time, for any or no reason. Employee agrees to provide the Company with two weeks' prior written notice of Employee's resignation from employment, all or a portion of which notice period is waivable by the Company in its discretion.

10.  Severability and Blue Penciling.  If any provision of this Agreement is held to be invalid, the remaining provisions shall remain in full force and effect. However, if any court determines that any covenant in this Agreement or any part thereof is unenforceable because the duration, geographic scope or restricted activities thereof are overly broad, then such provision or part thereof shall be modified by reducing the overly broad duration, geographic scope or restricted activities by the minimum amount so as to make the covenant, in its modified form, enforceable.

11.  Choice of Law and Forum.  This Agreement shall be interpreted and enforced in accordance with the laws of the State of New York, without regard to its conflict-of-law principles. The parties agree that any dispute concerning or arising out of this Agreement or Employee's employment (or termination thereof) with the Company shall be exclusively resolved pursuant to the terms of the Company's ADR Program, which includes mandatory arbitration provisions.

12.  Assignment and Survival.  This Agreement shall inure to the benefit of each member of the Company Group and its successors and assigns and shall remain in full force and effect, and be binding on, Employee's

heirs and successors. The Company may transfer or assign this agreement to another person and/or entity without Employee's consent. Employee also agrees that the provisions of this Agreement shall survive the termination of his or her employment with the Company for any reason.

13.  Waivers and Amendments.  This Agreement may be altered, amended, modified, superseded or canceled, and the terms hereof may be waived, only by a written instrument signed by the parties hereto or, in the case of a waiver, by the party waiving compliance. No delay by any party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of any party of any such right, power or privilege, nor any single or partial exercise of any such right, power or privilege, preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

14.  Entire Agreement.  This Agreement, together with the Company's ADR Program, constitute the entire understanding and agreement of the Parties regarding the subject matter hereof. This Agreement supersedes all prior negotiations, discussions, correspondence, communications, understandings and agreements regarding such subject matter. The Parties each acknowledge and agree that they are not relying on, and they may not rely, on any oral or written representation of any kind that is not set forth in writing in this Agreement.

(signature page follows)

IN WITNESS WHEREOF, the Company has caused this Agreement to be signed by its duly authorized representative, and Employee

has executed this Agreement, as of the dates set
forth below.

**EMPLOYEE**

Name:

Date: _4-24-17_

**MIRADOR REAL ESTATE LLC**

By:

Name: LESLIE ZEMNICK
Title: DIRECTOR OF OPERATIONS

Date: _4-24-17_

## MIRADOR REAL ESTATE, LLC.

### ALTERNATIVE DISPUTE RESOLUTION PROGRAM

In an effort to provide an efficient and economical forum for the resolution of employment related complaints, Mirador Equities, Inc. (the "Company" or "Mirador"), has adopted the complaint resolution procedure and alternative dispute resolution ("ADR") program described herein ("Program").

Mirador has always tried to administer its employment policies fairly and to treat all employees with respect and dignity. We have tried to maintain a workplace where our employees could work, develop and advance to the full extent of their capabilities, as part of the Company family. Nevertheless, and despite our best efforts, situations occasionally arise where an employee disagrees with the implementation, application or enforcement of Company practices or rules as they may pertain to an employee's specific circumstances. Situations may also develop where an employee believes that he or she has suffered discrimination, harassment or retaliation in the workplace.

The Company has created this two step Program as the exclusive and mandatory method of resolving disputes between you and the Company. In exchange for your agreement to submit such disputes to the Program, the Company likewise agrees to use the Program as the exclusive method of resolving disputes with you that are covered by this Program. Hence, under this Program, both you and Mirador shall be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised pursuant to the procedures set forth in this Program.

Information regarding an employee's complaint will, to the greatest extent practicable under the circumstances, be held in strict confidence. Supervisors, department heads, and other members of management who investigate a problem will discuss it only with those individuals who have a reason to know about it or who are needed to supply the necessary background information.

At no time will retaliation result from your use of any part of the Program.

Please bear in mind that this Program is not intended to create an employment contract for any length of time, as all employment is at-will, terminable by you or the Company at any time, with or without cause or notice, unless otherwise provided in a written agreement signed by the President of Mirador.

#### Who the Employee Complaint Resolution Program Covers

The Program covers the Company and all employees of the Company, except that the Program will not be available with respect to any employee covered by an individual written employment contract or a collective bargaining agreement with different problem resolution provisions. Any reference in this Program to "you" or to our "employee" or "employees" will be a reference to you, or your successors and assigns, heirs, executors, administrators, legal representatives and agents.

*What the Employee Complaint Resolution Program Covers*

Claims or disputes exclusively covered by this the Program, which shall not be resolved by any federal, state or local court or agency, include:

(1)     any claim, cause of action or dispute (collectively, a "claim") involving you and one or more of the Company Entities (defined below) that otherwise could be asserted in court or before an administrative agency, including without limitation arising out of or related to your employment by the Company, or the termination of that employment, such as the following claims:  claims for breach of any contract or covenant (express or implied); wage and hour claims; tort claims; claims for unlawful discrimination, harassment and/or retaliation (including, without limitation, discrimination and/or harassment based on race, color, religious creed, sex, age, national origin, ancestry, disability, marital status, pregnancy, genetic information, sexual orientation or any other protected characteristic as established by law); claims relating to discipline and discharge, job bidding, seniority rights, plans and safety rules; claims for wages and other compensation or benefits; claims for attorneys' fees; claims for violation of any Company policy or practice; and/or claims for violation of any federal, state, local, or other governmental law, statute, rule, regulation, or ordinance (including, without limitation, Family and Medical Leave Act of 1993, the Americans With Disabilities Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974 (ERISA), Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Reconstruction Era Civil Rights Act, the Age Discrimination in Employment Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, the New York Labor Law, the New York State Human Rights Law or the New York City Human Rights Law;

(2)     any dispute relating to the arbitrability of any Covered Claim; and

(3)     any dispute relating to the interpretation, scope, applicability, enforceability or formation of this Program, including but not limited to any claim that all or any part of this Program is void or voidable (collectively, with the claims in clauses (1) and (2) above, "Covered Claims" or "Covered Complaints" and, each, a "Covered Claim" or "Covered Complaint").

As used herein, "Company Entities" means the Company and the entities for which it manages; each of their former, current and future parents, subsidiaries, divisions and affiliates; each of the foregoing's current, former and future agents, representatives, employees, officers, directors, principals, shareholders, members, trustees, heirs, joint venturers, investors, partners, owners and controlling persons; and each of the foregoing's predecessors, successors and assigns.

If you have a claim or complaint that is not the type that could be asserted in a court or before an administrative agency, you are nevertheless encouraged to use Step One of this Program (Open Door Policy) in an effort to resolve such claim or complaint; however, Step Two of this Program (Arbitration) is not available for such claims or complaints.  Such claims or

complaints may involve your disagreement with the specific implementation or enforcement of a Company practice or rule to your situation or a job-related problem concerning a co-worker that, in either case, does not implicate a potential violation of any federal, state, local, or other governmental law, statute, rule, regulation or ordinance.

### Claims Not Covered by the Program

Notwithstanding the foregoing, Covered Claims or Covered Complaints shall not include:

(1)     claims for workers' compensation benefits;

(2)     claims for unemployment compensation benefits;

(3)     claims based upon the Company's current, successor or future employee benefits and/or welfare plans that contain an appeal procedure or other procedure for the resolution of disputes under the plan;

(4)     claims for violation of the National Labor Relations Act, as amended;

(5)     claims for temporary or preliminary injunctive or other interim equitable relief in anticipation of, or in aid of, arbitration under this Program concerning: (i) violation of specific provisions of any written agreement between you and Mirador or any other Company Entity; (ii) unfair competition; or (iii) the unauthorized use or disclosure of the trade secrets, confidential information or proprietary information of Mirador or any other Company Entity ("Claims for Interim Equitable Relief"); and

(6)     to the extent required by applicable law, administrative claims before federal or state administrative agencies (including without limitation claims before the Equal Employment Opportunity Commission); provided, however, that any such claim or complaint for damages, injunctive relief or other relief that you assert in your individual capacity is required, pursuant to this Program, to be arbitrated in accordance with the terms of this Program.

### How the Employee Complaint Resolution Program Works

The Program offers you two steps to help resolve your Covered Complaint.

#### STEP ONE – OPEN DOOR POLICY

Bring your Covered Complaint or question to your immediate supervisor; however, if you believe a discussion with your immediate supervisor is inappropriate, you may discuss the Covered Complaint with another member of management or the payroll department. If your Covered Complaint involves a violation of the Company's policies against harassment, discrimination or retaliation, instead of using the foregoing complaint procedure, you are required to follow the complaint procedures for such matters set forth in the Company's Employee Handbook. You may contact the payroll department regarding any questions about the appropriate complaint procedure to use. A sincere effort will be made to solve your Covered

Complaint or to help you address the situation in such a way that will benefit both you and the Company.

Step Two – Arbitration Under The Company ADR Program

A.    Contents of Notice, Time Limits, and Statute of Limitations

If your Covered Complaint has not been resolved to your satisfaction at Step One, you should request arbitration of your Covered Complaint, subject to the following requirements:

(1)    You should submit your request for arbitration in writing promptly after taking Step One.

(2)    In addition, the party (Company or Employee) that claims to be aggrieved must give written notice of arbitration to the other within one hundred and eighty (180) calendar days of the date the aggrieved first had knowledge of, or could reasonably have discovered, the facts or events giving rise to the claim; otherwise the claim shall be deemed conclusively resolved against the aggrieved party, unless there is a federal, state or local statute of limitations that provides more time to pursue the claim, in which event, written notice of arbitration must be provided prior to the expiration of the applicable statute of limitations.

(3)    Your request for arbitration must be in writing, signed by you, and must be delivered to the payroll department for processing. Your request should include the following information: your name; job classification and department; home address and telephone number. The written notice must describe the nature of all claims asserted and the facts upon which such claims are based. Forms for requesting arbitration are available from the payroll department. If you wish, the payroll department will assist you in completing the form and compiling the necessary papers.

(4)    Employees will be given written notice of a Company claim against them (in a form similar to that required from employees) by hand or by mail at the last address recorded in their personnel files.

B.    Selection of Arbitrator and Rules of Arbitration

Arbitration under this Program shall be before JAMS, and, except as may otherwise be provided in this Program, in accordance with JAMS' Employment Arbitration Rules & Procedures (the "Rules"), with the additional proviso that the arbitration shall be conducted on a strictly confidential basis.

(1)    The arbitration shall be before a single arbitrator (the "Arbitrator") selected by the parties pursuant to the Rules. The Arbitrator shall be a retired judge from JAMS' list of neutrals.

(2)    The arbitration shall take place at JAMS' office located in New York, New York, unless you and the Company agree on another location.

(3)     There shall be no right or authority for any Covered Claims to be arbitrated on a class action basis or in a purported representative capacity on behalf of any other persons or entities. Additionally, you and the Company do not have the right to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim. A Covered Claim may not be joined or consolidated in the arbitration with any claim that does not involve precisely the same parties as such Covered Claim, unless otherwise agreed to in writing by all parties.

(4)     The Arbitrator shall apply the substantive law, including the law applicable to limitation periods and, if applicable, law of remedies, of the State of New York, or federal law, or both, as applicable to the claim(s), without regard to choice of law principles. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies.

(5)     The Arbitrator, and not any federal, state, or local court shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Program, including matters of arbitrability. The arbitration shall be final and binding upon the parties for all purposes.

(6)     The burden of proving any claim asserted pursuant to this Program lies with the aggrieved party and must be proven by a preponderance of the evidence.

(7)     Each party shall have the right to subpoena witnesses and documents to be produced at the arbitration hearing.

(8)     Either party, at its own expense, may arrange and pay for the cost of a court reporter to provide a stenographic or other record of the proceedings. The other shall have the right to obtain a copy of such record at the reporter's usual cost, from the reporter.

(9)     Either party may bring an action in any court of competent jurisdiction to compel arbitration, and to enforce an arbitration award under this Program. Except as otherwise provided in this Program, neither the Company nor the employee shall initiate or prosecute any lawsuit in any way related to any of the Covered Claims.

(10)    Notwithstanding that Claims for Interim Equitable Relief are not Covered Claims, the Arbitrator shall have the non-exclusive authority to grant such claims.

(11)    The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the Arbitrator deems necessary. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure and thee judicial authorities interpreting those rules upon notice of such a motion, the Arbitrator shall establish a briefing schedule and, if necessary, schedule oral argument with respect to such motion.

(12)    Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

(13)    Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

(14)    The Arbitrator may award any remedies which would be available before a governmental agency or in any court under the applicable law as provided herein.

(15)    The Arbitrator shall render an award and opinion no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award, and a copy thereof shall be mailed to the affected employee and to the President of the Company.

(16)    Either party shall have the right, within twenty (20) days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Program) shall then be final and conclusive upon the parties.

(17)    Any conflict between the Rules and those set forth in this Program shall be resolved in favor of those in this Program.

(18)    The results of the arbitration, unless otherwise agreed or ordered by the Arbitrator on motion, are confidential and may not be reported to or discussed with any news agency or legal publisher or service, or with any person or entity not directly involved in the dispute.  All evidence discovered in the prehearing process or submitted at the hearing is confidential and may not be disclosed, except pursuant to court order.

C.    <u>Discovery of Facts</u>

In an attempt to balance the objectives of speedy and cost-efficient dispute resolution with the need for enough information to advance and/or defend a Covered Complaint, there will be limited discovery available to the Company and the employees participating in the arbitration.

(1)    At least forty-five (45) days before the arbitration hearing, the parties shall exchange copies of those documents they intend to use in the arbitration and a list of the names and addresses of witnesses, including experts, if any, they intend to call at the arbitration.

(2)    Each party shall be entitled to have the following pre-hearing discovery: (i) the right to serve on another party one set of interrogatories in a form consistent with Rule 33 of the Federal Rules of Civil Procedure, which shall be limited to the

identification of potential witnesses (*i.e.*, the identity of the witness's name, current address and telephone number, and a brief description of the subject of testimony); (ii) the right to serve on the other party one set of document requests in a form consistent with Rule 34 of the Federal Rules of Civil Procedure, which shall be limited to twenty-five (25) requests (including subparts, which shall be counted separately); (iii) the right to conduct up to two (2) seven-hour days of depositions of the witnesses or the parties in accordance with the procedures set forth in Rule 30 of the Federal Rules of Civil Procedure, and the right to conduct the deposition of any expert witness designated by the other party; (iv) the right to subpoena the production of documents from third parties; and (v) the right to seek a physical or mental examination consistent with Rule 35 of that Federal Rules of Civil Procedure.

(3)     Additional discovery shall be available on application to, and obtaining an order from the Arbitrator, upon a showing of substantial need.

(4)     All privileges recognized by law (for example, inter-spousal, attorney-client, or attorney work-product, clergy-penitent, or doctor-patient) will be fully applicable.

D.     Fees and Costs

(1)     All initial costs of arbitration, including any filing fee, shall be borne by the party initiating the proceeding.

(2)     All fees and incidental expenses of the Arbitrator shall be paid for entirely by the Company, unless the employee requests a different arrangement.

(3)     The employee may request that other Company employees appear and testify before the Arbitrator as witnesses. Such Company employees will not lose pay for regular time lost from work to participate in or testify at a hearing, provided arrangements have been made in advance with the payroll department.

(4)     You must arrange for and, if applicable, pay for any other persons (not employees of the Company) whom you wish to testify at the hearing.

(5)     Except as described above or as otherwise provided in the final arbitration award consistent with the provisions of this Program and the applicable law of remedies, each party shall pay for its own costs, witness and attorneys' fees, if any.

*Additional Remedies*

1.     If the Employee or the Company prevails in arbitration on a statutory claim that affords the prevailing party attorneys' fees, the Arbitrator may award reasonable attorneys' fees to the prevailing party.

2.     The Arbitrator shall also have the authority to assess an appropriate sanction, including payment of a party's legal fees and the costs of arbitration and other penalties consistent with the applicable law as provided herein, in the event the Arbitrator finds the Covered Complaint

or defenses thereto were not well-grounded in fact, were not warranted by existing law or were asserted for an improper purpose, such as harassment or retaliation.

### *Judicial Review*

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Program and to enforce an arbitration award. A court of competent jurisdiction may enter judgment upon an award rendered pursuant to this Program, either by (i) confirming the award or (ii) vacating, modifying, or correcting the award on any ground referred to in the Federal Arbitration Act or other applicable law, except that the standard of review on an application to set aside an arbitration award will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

### *Preclusive Effect and Bar to Other Proceedings*

1.      This Program precludes litigation and re-litigation in any federal, state, or local court by either the Company or its employees of any claim that has been, is being, will be, or could or should have been arbitrated under this Program. This Program also bars the recovery of, or right to share in, payments of any amounts of money for any reason (including, without limitation, back pay, front pay, or other damages, penalties, costs, expenses, and attorneys' or other fees) in any government agency or court action or proceeding (except for actions to compel arbitration or to enforce an Arbitrator's award under this Program) brought by or on behalf of either the Company or an employee arising out of or related to any matter arbitral under this Program. The right to bring or participate in any such action or proceeding is entirely replaced by the remedies available at arbitration.

2.      Whether or not an employee proceeds to arbitration at STEP TWO, the employee must utilize and exhaust STEP ONE under this Program; otherwise, the employee's Covered Complaint shall be deemed conclusively resolved against the employee.

3.      Failure on the part of the employee to exhaust STEP TWO of this Program within time limits specified shall be a complete defense to Company liability on the Covered Complaint in any court of law.

### *Waiver of Jury Trials*

If any court determines for any reason that this Program is not binding, or otherwise allows any litigation in court regarding a Covered Claim, the employee and the Company expressly waive any and all rights to a trial by jury in or with respect to such court litigation.

### *Miscellaneous Provisions*

1.      <u>Sole and Entire Statement of Program</u>

This Program sets forth the complete agreement between you and the Company on the subject of arbitration of disputes and claims and supersedes any prior or current oral or written understanding on the subject. Neither party may rely on any representations, oral or written, on

the subject of the effect, enforceability or meaning of this Program, except as specifically set forth in this Program.

2.    Requirements for Modification or Revocation

This Program as it applies to you survives your termination of employment with the Company, and may be modified only by a writing signed by you and the Company's president. This Program may not be modified by oral or implied agreements, understandings or arrangements.  No employee or agent of the Company is authorized to make any agreement, understanding or arrangement to the contrary to the foregoing.

3.    Construction

If any provision of this Program is adjudged to be void or otherwise unenforceable, in whole or in part, such judgment shall not affect the validity of the remainder of the Program.

4.    Consideration

The Company's hiring and/or continuing your employment as an employee-at-will on a day-to-day basis is based in part on your agreement to the terms hereof, including, without limitation, your agreement:  (i) to submit all Covered Claims and Covered Complaints, including but not limited to statutory claims of discrimination or harassment, to final and binding arbitration and (ii) in the event the employee is allowed to litigate a dispute with the Company in court, to waive the right to a jury trial.  Moreover, in consideration for your commitments, the Company has also agreed to submit all claims it may have against you to final and binding arbitration, and has agreed to the waiver of jury trial in the event it is allowed to litigate against you in court.

5.    **NOT AN EMPLOYMENT CONTRACT**

**THIS POLICY IS NOT, AND SHALL NOT BE CONSTRUED TO CREATE, ANY CONTRACT OF EMPLOYMENT, EXPRESS OR IMPLIED, FOR ANY LENGTH OF TIME.  NOR DOES THIS POLICY IN ANY WAY ALTER YOUR STATUS OF EMPLOYMENT, WHICH SHALL BE "AT-WILL," UNLESS OTHERWISE PROVIDED PURSUANT TO A WRITTEN AGREEMENT SIGNED BY THE COMPANY'S PRESIDENT.**

6.    **ACKNOWLEDGMENT**

**YOU ACKNOWLEDGE AND REPRESENT THAT YOU HAVE READ THE PROVISIONS PERTAINING TO THE COMPANY'S ADR PROGRAM AND UNDERSTAND, ACKNOWLEDGE, AND KNOWINGLY AND VOLUNTARILY AGREE TO SUCH PROVISIONS AS A CONDITION OF YOUR EMPLOYMENT OR CONTINUED EMPLOYMENT WITH THE COMPANY.**

*Christine DeFrancesco*
(Print Name of Employee)

*Christine DeFrancesco*
Employee's Signature

4/24/17
Date

*LESLIE ZEMNICK*
(Print Name of
Company Signatory)

Company's Signature

4/24/17
Date

10