# Exhibit 4

# BORRELLI & ASSOCIATES
## P.L.L.C.

www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

March 15, 2018

*Via First Class & Electronic Mail*
Ms. Karla Saladino, Associate Broker/Managing Partner
Mirador Real Estate, LLC
16 East 12th Street
New York, New York 10003
karla.saladino@miradorrealestate.com

   Re: *Christine DeFrancesco*

Dear Ms. Saladino:

   As previously advised by letter dated February 27, 2018 ("Demand Letter"), Ms. DeFrancesco has retained this office in connection with her claims against Mirador Real Estate, LLC, and you individually, (collectively as "Mirador," "you," or "the Company"), pursuant to the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and Section 7434 of the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434. Generally, Ms. DeFrancesco alleges that throughout her employment, the Company failed to pay her overtime compensation for all hours worked per week over forty, and failed to pay her commissions or provide her with accurate wage statements on each payday or an accurate wage notice at hire, all in violation of the FLSA and NYLL, respectively. Further, when she complained about the Company's failure to pay her commissions, Ms. DeFrancesco contends that the Company retaliated by terminating her employment, in violation of the NYLL. And finally, that the Company issued her a fraudulent information return for the 2017 tax year in violation of the IRC.

   Inexplicably, Mirador has disregarded our initial Demand Letter and failed to respond as requested. Be advised that should Mirador fail to initiate contact within **ten days** of receipt of this second letter, we will immediately commence appropriate legal action. For your convenience, I have included a copy of the Demand Letter. I write now in a **<u>final attempt</u>** to resolve this dispute

amicably, expeditiously, and confidentially before we are forced to litigate Ms. DeFrancesco's claims. I remain hopeful that we may reach a resolution.

This letter shall also serve to elaborate on our prior request in the Demand Letter that Mirador place a litigation hold on all potentially relevant documents and electronically stored information. The remainder of this letter will provide a guide to, but not an exhaustive list of, the potential evidence that should be preserved. If you have any questions in that regard, please direct them to me.

By this letter, Mirador is hereby given notice of its duty to preserve and safeguard against the destruction and/or spoliation of evidence that is in any way related to this matter, including, but not limited to, the following enumerated items in paragraph 1 ("Data to Be Preserved") below. Please be advised that this is a representative list only and that it is Mirador's responsibility, and the responsibility of its counsel, to determine and identify the information in its possession that might be relevant to this matter (as further defined immediately below), and to preserve that information.

For the purposes of the following, the term "this matter" means the claims that Ms. DeFrancesco has against Mirador described in our Demand Letter.

The term "communication" means all manners and means of disclosure, transfer, and exchange of thoughts, facts, information, and opinions between two or more persons or entities, whether designated confidential, privileged, or otherwise. For example, a "communication" includes, but is not limited to, any disclosed, transferred, or exchanged document, email, memorandum, text message, report, telephone, facsimile, face-to-face, audiotape, contract, agreement, solicitation, offer, proposal, voicemail, financial statement, transcript, word spoken or heard at any meeting, discussion, interview, encounter, conference, speech, conversation or other similar occurrence, word written or read from any document, and drafts or copies of any of the foregoing, transmitted or drafted and never transmitted, that contain any notes, comments, metadata, or markings of any kind not found in the original communication, or that are otherwise not identical to the original communication.

The term "document" includes, but is not limited to: drawings, charts, letters, envelopes, contracts, electronic mailings (e-mails), text messages, tweets, instant messages, web sites, blog posts, chat group posts, telephone message slips, telephone logs, telephone bills, agreements, memoranda, telegrams, messages, notes, reports, forms, inter-office communications, intra-office communications, "Post-It" or similar notes, stenographic notes, affidavits, statements, spreadsheets, market studies, summaries, opinions, reports, studies, analyses, evaluations, calculations, projections, contracts, agreements, tax returns, jottings, agendas, bulletins, notices, announcements, advertisements, tabulations, judicial pleadings and related papers, sound

recordings, appointment books, appointment logs, desk calendars, diaries, checks, paystubs or other pay statements, check books, drafts, wire transfers, transmittal authorizations, bank statements, ledgers, journals, work orders, logs, purchase orders, bills of lading, letters of credit, invoices, travel vouchers, promotional materials, lists, notebooks, computer print-outs, electronically or magnetically recorded or stored data, photographs, tape recordings, transcripts, minutes, opinions, signed statements, summaries notices, books, articles, newspapers, charts, magazines, menus, computer program listings, computer files, computer printouts, materials of any sort and any format maintained or available at any time on the World Wide Web (whether formerly or currently, or both), microfiche, microfilm, data maintained electronically in any computer database, data used to input information into any computer database, and all other documentary material including non-identical copies (whether different from the original because of any alterations, notes, comments or other material contained therein or attached thereto or otherwise), and drafts and all electronic and digital copies of the aforementioned documents, whether used or not. For the avoidance of doubt, the term "document" includes any electronically stored information ("ESI").

And, the terms "regarding" and "relating to" including their various synonyms, such as "concerning," mean: affecting, amounting to, analyzing, composing, comprising, consisting of, constituting, containing, covering, denoting, describing, disclosing, discussing, divulging, embracing, evidencing, explaining, forming, generating from, illuminating, indicating, involving, meaning, pertaining to, referencing, referring to, reflecting, relying upon, reviewing, setting forth, showing, signifying, summarizing, symbolizing, or in any way logically or factually connecting with the subject matter described in each item.

1. Data to be Preserved: The type of information that should be preserved includes, but is not limited to, the following (where such information is ESI, it should be preserved in accordance with the steps set forth in paragraphs 2-8 below):

   a. Any and all of the documents surrounding Mirador's employees' time records and rate of pay;

   b. Any and all documents regarding or relating to - - in whole or in part - - Ms. DeFrancesco, including but not limited to copies of her personnel file;

   c. Any and all employment records for all employees of Mirador through the present;

   d. Any and all of the documents surrounding Mirador's severance offered to Ms. DeFrancesco, including but not limited to tax documents, e-mail communications, and text messages.

2.     On-line Data Storage and Servers:  With regard to on-line storage and/or direct access storage devices attached to Mirador's servers: do not modify or delete any ESI existing at the time of this letter's delivery, which meet the criteria set forth in paragraph 1 above, unless a true and correct copy of each such ESI has been made and steps have been taken to assure that such a copy will be preserved and accessible for the purposes of this matter.

3.     Metadata:  Mirador should anticipate the need to disclose and produce system and application metadata and act to preserve it.  System metadata is information describing the history and characteristics of other ESI.  This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, and dates of creation and last modification or access.  Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration, and distribution data and dates of creation and printing.  Please be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI.  For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

4.     Off-Line Data Storage, Backups, Archives, and Other ESI:  With regard to all ESI used in off-line storage, including, for example, compact discs (e.g., CD-R disks, DVDs), magnetic tapes, cartridges, and other related media, which, at the time of this letter's delivery, contain any ESI meeting the criteria listed in paragraph 1 above: stop any activity that may result in the loss of such ESI, including rotation, destruction, overwriting, and/or erasure of such media used for data storage in connection with your computer systems, whether used with portable and home computers, thumb drives, PDA's, smart phones, or other forms of ESI storage, and whether containing backup and/or archive data sets, metadata, and other ESI, for all of your computer systems.

5.     Replacement of Data Storage Devices:  Do not dispose of any ESI storage devices and/or media that may be replaced due to failure and/or upgrade and/or other reasons that may contain ESI meeting the criteria listed in paragraph 1 above.

6.     Home Systems, Laptops, Online Accounts, and Other ESI Venues:  To the extent that potentially relevant ESI was sent or received or created or reviewed away from Mirador's on-line data storage systems and servers, **such as on your personal computer or any personal electronic device including your cell phone(s)**, Mirador must preserve the contents of those systems, devices, and media used for these purposes.  This includes, but is not limited to, potentially relevant data from portable and home computers, as well as portable thumb drives and external hard drives, CD-R disks and DVDs, and PDA's, smart phones, voice mailboxes, and other forms of ESI storage.  Similarly, if potentially relevant ESI was sent or received or created or

Case 1:18-cv-04032-VSB-KHP   Document 41-4   Filed 05/03/19   Page 6 of 11

Page | 5

reviewed via on-line or browser-based e-mail accounts or services (e.g., AOL, Gmail, Yahoo), Mirador must preserve the contents of these account mailboxes (including, but not limited to, Sent, Deleted, and Archived Message folders, as well as any peer-to-peer chat folders). **It is of utmost concern that Mirador preserve any thumb drives, flash drives or other external hard drives that it has accessed or to which it made alterations during the course of any of the events or time period that we reference in the Demand Letter.**

7. Programs and Utilities: Preserve copies of all applications, programs, and utilities that may be used to process electronic data covered by this letter.

8. Log of Systems Modifications: Maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed in paragraph 1 above, regardless of whether such modifications were made by employees, contractors, vendors, and/or any other third-parties.

9. Evidence Created Subsequent to this Letter: With regard to any data created subsequent to the date of delivery of this letter, relevant evidence should not be destroyed and Mirador should take whatever steps are appropriate to avoid destruction of evidence.

10. No Limitation on Discovery: The foregoing list of documents to be preserved (as defined above) is by no means intended to be comprehensive, and in no way limits the documents, information, and/or other relevant evidence that Ms. DeFrancesco may seek in discovery should this matter proceed to litigation.

I have instructed Ms. DeFrancesco likewise to preserve all records currently in her possession relating to this matter. If there are any other documents or records that Mirador believes Ms. DeFrancesco possesses or that Mirador believes need be preserved, please promptly advise.

Your prompt attention to this matter is expected. We await your response.

Respectfully,

Michael R. Minkoff, Esq.
*For the Firm*

Enclosure

C:   Client

# BORRELLI & ASSOCIATES
### P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

February 27, 2018

*Via First Class & Electronic Mail*
Ms. Karla Saladino, Associate Broker/Managing Partner
Mirador Real Estate, LLC
16 East 12th Street
New York, New York 10003
karla.saladino@miradorrealestate.com

      Re:    *Christine DeFrancesco*

Dear Ms. Saladino:

      The above-referenced individual has retained this office in connection with her claims against Mirador Real Estate, LLC, and you individually, (collectively as "Mirador," "you," or "the Company"), pursuant to the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and Section 7434 of the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434. Generally, Ms. DeFrancesco alleges that throughout her employment, she routinely worked in excess of forty hours per week, yet the Company failed to pay her overtime compensation for all hours worked per week over forty in violation of the FLSA and the NYLL. Ms. DeFrancesco also alleges that the Company failed to pay her commissions or provide her with accurate wage statements on each payday or an accurate wage notice at hire, all in violation of the NYLL. Worse, when she complained about the Company's failure to pay her these commissions, Ms. DeFrancesco contends that the Company retaliated by terminating her employment, in violation of the NYLL. As icing on the cake, and as one last effort to cause Ms. DeFrancesco further harm, our client asserts that the Company issued her a fraudulent information return for the 2017 tax year in violation of the IRC by including money that she never received for a supposed "severance" as part of her 2017 W-2 income. Ms. DeFrancesco sets forth her specific allegations as follows:

As you know, Ms. DeFrancesco worked for Mirador as the Leasing Manager of Midtown East from on or about April 10, 2017 until November 22, 2017. Despite her title as a "manager," Ms. DeFrancesco did not have any meaningful discretion or managerial responsibilities, as she was not responsible for hiring or firing decisions and did not issue discipline to other employees. Instead, Ms. DeFrancesco's primary duty was to lease apartments, which involved, but was not limited to, the following tasks: on-site showing of apartments; verifying potential tenants' applications; handling paperwork for leasing applicants; signing leases; and closing leasing deals. In her time at the Company, Ms. DeFrancesco participated in approximately one hundred and seventeen leasing deals and closed at least twenty leasing deals on her own.

To complete her work, the Company scheduled and required Ms. DeFrancesco to work at least forty-five hours per week, on Monday, Tuesday, Wednesday, Friday, and Saturday. But in addition to her normal schedule, the Company required Ms. DeFrancesco to work an additional one-to-two hours per day on her normally-scheduled days and three-to-four hours per day on her scheduled "off days" - - Thursday and Sunday - - for a total of approximately sixty-three hours per week. For her work, the Company compensated Ms. DeFrancesco with an annual salary of $70,000.00, or $1,346.15 per week, which by operation of law covered only the first forty hours of work per week, and which computes to a regular hourly rate of $33.65. The Company thus failed to pay Ms. DeFrancesco at any rate of pay - - much less at the legally-mandated rate of one and one-half times her straight-time rate of pay, which is $50.48 - - for any hours that she worked in a week in excess of forty. The Company also failed to provide Ms. DeFrancesco with wage statements on each payday that accurately reflected her actual hours worked, her regular or overtime rates, or her earned commissions, or with a wage notice at hire that accurately listed, among other things, her regular and overtime rates of pay, or her regular pay day, leading to an additional $10,000.00 in statutory penalties pursuant to Section 198(1)(b) and (1)(d) of the NYLL.

Additionally, Mirador promised to pay Ms. DeFrancesco commissions in addition to her base salary based on the leasing deals that she completed on behalf of the Company. Specifically, for the deals that she closed entirely on her own, Ms. DeFrancesco earned $850.00 per deal, and for the deals that she assisted others in closing or with paperwork, she earned 3% of the total commission received by the Company. Further, for some deals in which she assisted others more actively, she earned 10-20% of $850.00, depending on the particular deal. Throughout her time at the Company, Ms. DeFrancesco earned at least $26,883.80 in commissions. But curiously, as described in greater detail below, the company completely failed to pay her a single penny of her earned commissions.

As a result of the Company's gross wage and hour violations, we estimate that you owe Ms. DeFrancesco $51,882.07 in unpaid overtime, $26,883.80 in unpaid commission, an additional 100% of the combined total of these amount as liquidated damages, $10,000.00 in the aforementioned statutory penalties, interest, reasonable attorneys' fees, and any costs incurred to

vindicate her rights. All told, exclusive of interest and fees, the Company is liable to Ms. DeFrancesco for at least an estimated minimum of $167,531.74.

Making matters worse, Mirador terminated Ms. DeFrancesco's employment in blatant retaliation for complaining about not receiving her commissions. That is, Ms. DeFrancesco inquired multiple times regarding her unpaid commissions, including in a September 5, 2017 email to you personally. But after telling her that she would receive her commissions in December 2017, rather than pay her, you terminated Ms. DeFrancesco's employment on or about November 22, 2017. The Company is therefore liable under the NYLL for its retaliatory termination of Ms. DeFrancesco's employment in the amount of her lost wages and benefits, emotional harm, punitive damages, liquidated damages, interest, and her reasonable attorneys' fees and costs.

And to top it all off, the Company issued to Ms. DeFrancesco a fraudulent IRS Form W-2 information return for the 2017 tax year, in gross violation of the IRC. Specifically, when firing her, the Company offered Ms. DeFrancesco a severance payment of $2,692.32 by letter dated November 22, 2017, the date of her termination. However, Ms. DeFrancesco never accepted this amount, nor has she received it. Nevertheless, the Company issued Ms. DeFrancesco an IRS Form W-2 containing this alleged amount. This was fraudulent. As a result, the Company is liable to Ms. DeFrancesco for the greater of $5,000.00, or the sum of any actual damages she sustained as a result of the Company misrepresenting her income, plus costs and her reasonable attorneys' fees incurred to vindicate her rights.

As you can glean, the Company's liability in this matter is serious and substantial, and Ms. DeFrancesco has instructed us to file a federal lawsuit on her behalf. But before we do so, we write to offer the Company the opportunity to resolve this matter - - expediently and confidentially - - at its inception. If the Company has any interest in resolving this matter in such a fashion then someone will contact us upon receipt. If we do not hear from someone within <u>ten</u> days of the date of this letter, we will assume that the Company has no interest in resolving this matter in such a manner and we will proceed accordingly.

The above-referenced text is merely a summary, should in no way be construed as a complete recapitulation of all pertinent facts, and is written without prejudice and without waiver of and indeed with full reservation of all of our client's rights and remedies.

Please note this letter constitutes a notice of intent to sue and any and all documents, including, but not limited to, contracts, reports, notes, memoranda, investigatory findings, e-mail correspondence, and any other electronically stored information relating to Ms. DeFrancesco, whether or not pertinent and/or material to the aforementioned claims, or to any potential claims that she may have, should be preserved to every extent possible. We also request that in responding to this letter you provide us with a full and complete copy of Ms. DeFrancesco's personnel file,

including all records reflecting the hours that she worked, the deals that she worked on, and/or any wages or commissions that the Company contends that it paid to her. In conjunction with that request, please also immediately produce any agreement that the Company contends contains alternative dispute resolution procedures that would govern the claims described herein.

We await a prompt response.

Respectfully,

Michael R. Minkoff, Esq.
*For the Firm*

C:   Client

| | |
|---|---|
| **From:** | Luiggi Tapia |
| **To:** | karla.saladino@miradorrealestate.com |
| **Cc:** | Michael R. Minkoff |
| **Subject:** | Christine DeFrancesco |
| **Date:** | Thursday, March 15, 2018 7:08:04 PM |
| **Attachments:** | image003.png |
| | 3.15.18 letter to K. Saladino re C. DeFrancesco.pdf |
| | 2.27.18 ltr to Ms. Saladino re C. DeFrancesco.pdf |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

Dear Ms. Saladino:

On behalf of Michael R. Minkoff, Esq., please see the attached.

Best Regards,

Luiggi Tapia, Paralegal

Borrelli & Associates, P.L.L.C.

1010 Northern Boulevard, Suite 328

Great Neck, NY 11021

Tel. No. (516) 248-5550

Fax No. (516) 248-6027

www.employmentlawyernewyork.com

lt@employmentlawyernewyork.com

655 Third Avenue, Suite 1821

New York, NY 10017

Tel. No. (212)679-5000

Fax No. (212)679-5005

www.employmentlawyernewyork.com

lt@employmentlawyernewyork.com

Borrelli__Associates_PLLC-DK-200



Note: The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. Unintended transmission shall not constitute waiver of the attorney/client privilege or any other privilege. This e-mail message may not be forwarded without the prior written consent of Borrelli & Associates, P.L.L.C. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission, conversion to hard copy, copying, reproduction, circulation, publication, dissemination or other use of, or taking of any action, or omission to take action, in reliance upon this communication by persons or entities other than the intended recipient is strictly prohibited. If you have received this communication in error, please (i) notify us immediately by telephone at (516)248-5550, and (ii)delete the message and any material attached thereto from any computer, disk drive, diskette, or other storage device or media. Thank you.